**Cite as:  Opinion No. 94-064 (December 21, 1994)**
**(unpublished)**


**CONSTITUTIONAL LAW ) COMMERCE CLAUSE ) EFFECT OF
SUPREME COURT'S DECISION IN *WEST LYNN CREAMERY* ON PRICE-
SETTING AUTHORITY OF PROPOSED MARYLAND MILK
COMMISSION**


December 21, 1994

*The Honorable Lewis R. Riley*
*Secretary of Agriculture*

You have requested our opinion whether the decision of the United States Supreme Court in *West Lynn Creamery, Inc. v. Healy*, 114 S. Ct. 2205 (1994), would prohibit a Maryland Milk Commission, if one were established by statute, from setting the minimum permissible sales price for milk that a wholesaler pays a farmer or a retailer pays a wholesaler.

In a letter of advice, a copy of which is attached, Assistant Attorney General Craig A. Nielsen concluded as follows: A nondiscriminatory law authorizing the setting of minimum milk prices would not be prohibited under the holding of *West Lynn Creamery*.  We agree with Mr. Nielsen's analysis of the case and his conclusion.

As Mr. Nielsen points out, neither *West Lynn Creamery* nor prior Supreme Court cases applying the Commerce Clause have ruled out state intervention to benefit local industries.  There can be little doubt, for example, that Maryland may use general tax revenues to subsidize a local industry: "`Direct subsidization of domestic industry does not ordinarily run afoul' of the negative Commerce Clause." *West Lynn Creamery*, 114 S. Ct. at 2214 n. 15 (quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 278 (1988)).  The vice of the scheme struck down in *West Lynn Creamery* was that the subsidy afforded the in-state taxpayers negated the effect of the tax, leaving the entire burden on out-of-state taxpayers.

No comparable problem would ordinarily arise from the price-setting proposal about which you inquire, assuming that the economic burden of artificially inflated prices falls on in-state and out-of-state purchasers alike.[1]  We should not be taken to be advising about the legality of any particular

---

[1] Nor would an antitrust issue arise, if, as we assume, the proposed Maryland Milk Commission were a State agency expressly authorized by the General Assembly to set prices and administer the program. *See Parker v. Brown*, 317 U.S. 341 (1943).

price-setting regulation, however.[2] We would assess the constitutionality of a particular regulation based on a detailed understanding of its impact on interstate commerce.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[2] If a Maryland Milk Commission were authorized to set prices, its action in doing so would constitute a "regulation," within the meaning of the Administrative Procedure Act. *See* §10-101(e) of the State Government Article, Maryland Code.